UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

In re:   Michael B. White and
Darla Kay White (Whites III),

       Debtors,

MICHAEL B. WHITE, and
DARLA KAY WHITE,

       Appellants,               Case No. 15-cv-12354

v.                                           Honorable Thomas L. Ludington

COLLENE K. CORCORAN, Chapter 7 Trustee,

       Appellee.

_____/

**ORDER GRANTING MOTION TO DISMISS AND DISMISSING APPEAL**

On June 30, 2015, Appellants Michael and Darla White appealed a June 25, 2015 order of the Bankruptcy Court for the Eastern District of Michigan. The order confirmed the sale of a piece of real estate that was a part of their Chapter 7 bankruptcy estate. That piece of real estate, commonly known as 11085 Block Road, was the Whites' principal residence and was, in terms of value, by far the largest asset of the bankruptcy estate.

On August 10, 2015, Appellee Chapter 7 Trustee Collene Corcoran moved to dismiss the appeal as moot because the real estate in question had been sold to a good faith purchaser and the Whites did not obtain a stay of the sale.

**I.**

Michael and Darla White were a husband and wife who resided in Birch Run, Michigan.[1] Michael White has worked in the fields of construction and sand mining. Darla White worked for a number of years in the insurance and trucking industries. The Whites' careers changed significantly in 2007 when Darla White began suffering from a disability. She was no longer able to work and Michael, facing his own issues with employment, took time to care for her. Darla's health never recovered after 2007 and she was unable to return to work. Eventually Michael found steady employment in the meat market at a local Meijer's, where he still works.

**A.**

The Whites purchased their primary residence at 11085 Block Road, Birch Run, Michigan ("Block Road property"), in 1990. The homestead consists of 40 acres of farmland and a farmhouse where the Whites reside. They paid the mortgage loan for the house in full in 2006. In 2007, the Whites sought a line of credit from Frankenmuth Credit Union ("FCU"). Their credit request was approved and they secured a $100,000.00 loan from FCU that was secured by a mortgage against the Block Road property. The loan money was withdrawn using a credit card issued to the Whites.

The Whites withdrew the full amount of the loan within eighteen months of the account being opened. By 2010, the Whites began to fall behind on their loan payments. They stopped making payments altogether in 2011. In response, FCU initiated a foreclosure action in Saginaw County Circuit Court. The Whites defended the action, contending that FCU's mortgage was invalid, but were unsuccessful. The Saginaw County Circuit Court entered a judgment of foreclosure in favor of FCU on July 15, 2011. FCU was authorized to hold a foreclosure sale after August 5, 2011 and to recover $113,789.23 in costs and fees.

---

[1] Darla White passed away after appeal was taken in this case.

**B.**

On July 30, 2015, before FCU conducted a foreclosure sale, the Whites sought bankruptcy protection and the automatic stay barred the foreclosure sale. As part of the Chapter 11 bankruptcy proceeding, the Whites were required to provide monthly operating reports to the bankruptcy court. Those reports were timely filed each month until the case was converted to a Chapter 7 proceeding.

**C.**

During the roughly one year that the Whites were in bankruptcy they reported a negative cash flow in their monthly operating reports more often than not. Indeed, seven of the twelve reports reflected a deficit. These reports also did not make any mention of the mortgage payments. The Whites also did not consistently service their car loan while in bankruptcy, evidenced by the fact that only some of their monthly operating reports show payments on that loan.

In addition to filing monthly operating reports, the Whites had to file a schedule of their assets. This was filed with their initial petition, but was also included in the monthly reports. While the asset schedules initially reflected significant assets relative to their debt, the Whites reduced the value assigned to their assets during the bankruptcy proceeding. Between April and May 2014, the Whites reduced the estimated asset value of their Block Road property from $360,000.00 to $170,000.00 and their WCI[2] stock from $240,000.00 to $20,520.00.

The Whites proposed two plans of reorganization. The first came ten months into the bankruptcy. All significant parties in interest objected to confirmation of the plan, including FCU, Ally Financial (holder of the Whites' car loan), and the United States Trustee. The plan's

---

[2] This is the acronym representing the Whites' personal incorporated entity. They use this entity to sell items on Amazon, amongst other things.

defining feature was a reduction of the amount owed by the Whites to FCU under the loan secured by their residence. At the time the first plan was proposed, FCU was owed $158,401.60 but the Whites proposed reducing that amount to $70,000.00, $30,000.00 of which would come from a Michigan state program set up to help those hardest hit by the mortgage crisis and only $40,000.00 would be paid by the Whites. The Whites also proposed that the $40,000.00 be paid over 25 years. The plan was not confirmed and the Whites were given 28 days to propose a new plan.

Shortly after the Whites proposed their first plan, the United States Trustee moved to have their case dismissed or converted to a Chapter 7 proceeding. FCU and Ally also moved to have the automatic stay lifted, allowing FCU to continue the foreclosure.

**D.**

The Whites filed their second plan of reorganization on August 21, 2014. A hearing was held the next day on the plan, the United States Trustee's motion to dismiss or convert, and the creditors' motion to lift the automatic stay. As with the first plan, the Whites' second plan attempted to reduce the amount actually owed to FCU, this time claiming that, if they owed anything, it "should not exceed $76,556.70." R. at 340. With this new plan, the Whites still proposed that FCU receive $30,000.00 in state funds, but increased the amount they would pay to $45,000.00, this time amortized over 40 years. The plan included a number of contingencies and liquidated payments to be made to them by the creditors, particularly FCU, pending the results of collateral proceedings unrelated to the bankruptcy. R. at 320. These included FCU agreeing, by confirming the plan, to paying the "Whites $175,000.00 for liquidated damages related to their loss of credit rating, pain & suffering, and related issues, in addition to any direct damages" if the Whites prevailed over FCU in their state court appeal. *Id*. The Whites also

inserted a condition that FCU would pay them $250,000.00 if the Whites lost their home to foreclosure but prevailed in the state court appeal. *Id*. Lastly, the Whites also required those payments to be made by FCU if "a government regulator deems the credit union to have committed any errors or wrongdoing in this matter" even if the Whites do not prevail in their state court appeal. *Id*.

The bankruptcy court declined to affirm the Whites plan and granted the motion to convert, converting the proceeding to a Chapter 7 bankruptcy, and lifted the stay imposed upon property securing the FCU and Ally loans. The Whites appealed to this Court. The bankruptcy court's decision to convert the case to a Chapter 7 proceeding was affirmed on July 31, 2015. The Whites' motion for reconsideration of that opinion was denied on March 7, 2016.

**E.**

After the bankruptcy filing was converted to a Chapter 7 proceeding, the Chapter 7 Trustee, Colleen Corcoran, moved for permission to sell property of the bankruptcy estate. The order permitted the sale of miscellaneous personal property, including jewelry and tools of trade. It also permitted the sale of a potential medical malpractice suit held by Darla White. The order also set parameters for the sale of the Whites automobile. Finally, the order contemplated the sale of three different parcels of property: 11085 Block Road, the Whites' primary residence and the most valuable piece of real estate; 11255 Block Road; and one half of "Lot 35 Shay Lake Sub 2 lot on boat canal Dayton Township, Tuscola County, Michigan." March 16, 2015 Order Allowing Sale, Doc. 299.

The 11085 Block Road property was sold at an online auction. The final bid received by the Trustee as a result of the auction was $156,115.23. The Whites dispute that this figure was the result of the live auction. The Trustee concedes that this figure was not the final bid but that

the highest bidder was contacted and the Trustee negotiated a higher price from the high-bidder in order to satisfy the mortgage-holder of the property.

There is no record of any other property of the bankruptcy estate being sold. On April 15, 2015, the Trustee filed a motion in the bankruptcy court to abandon much of the miscellaneous personal property, including the jewelry and tools of trade, and the Whites' personal automobile, and the half lot on Shay Lake back to the Whites. As to the 11255 Block Road property, the Trustee represents that it has been sold and closing is pending. That piece of real estate was specifically not abandoned by the Trustee. The Whites argue that they have made an offer and deposited earnest money in consideration of its sale.

The Whites attempted to compel abandonment of the 11255 Block Road property on September 18, 2015, but that motion was denied on October 22, 2015. When the bankruptcy court denied the Whites' motion to abandon the property it directed that any funds the Whites may have advanced in order to participate in an auction on the property had to be returned to the Whites. It also ordered that the Whites "be given notice of any future attempt to sell the property, and be given an opportunity to increase any price being offered." Oct. 22, 2015 Order Denying M. Compel, Doc. 433.

There have been no further material developments with the bankruptcy estate. As of this date, the only property remaining in the Chapter 7 estate that has not been sold or abandoned to the debtors are: the 11255 Block Road property; the Whites state court case against Frankenmuth Credit Union, the mortgage holder for the 11085 Block Road property; the potential medical malpractice action; and certain stock and assets held by one of the Whites' incorporated entities.

**II.**

The Whites appeal the bankruptcy court's order confirming the sale of 11085 Block Run, the primary real estate within the bankruptcy estate. *See In re Fortier*, 161 F. App'x 514, 516-517 (6th Cir. 2005) (describing the conditions under which a bankruptcy order is final and holding that an order authorizing the sale of property is a final order).

The Chapter 7 Trustee has moved to dismiss the appeal as moot pursuant to 11 U.S.C. § 363(m). That section provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). The "mootness rule applies when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets." *In re Parker*, 499 F.3d 616, 620-21 (6th Cir. 2007) (quoting *In re 255 Park Plaza Assocs. Ltd. P'ship,* 100 F.3d 1214, 1216 (6th Cir.1996)). "This provision limits appellate review of a consummated sale . . . regardless of the merits of legal arguments raised against it." *In re Made in Detroit, Inc.*, 414 F.3d 576, 581 (6th Cir. 2005) (internal quotation marks omitted). The rule "maximizes the purchase price of assets because without this assurance of finality, purchasers could demand a large discount for investing in a property that is laden with the risk of endless litigation as to who has rights to estate property." *Id*.

The bankruptcy court authorized the sale of the 11085 Block Road property on March 16, 2015 and then confirmed the sale on June 25, 2015. There is no evidence in the bankruptcy record that the Whites obtained a stay of the property sale by posting the appropriate cash bond. The Whites had until July 2, 2015 to do so. Thus, the only way that the Whites can avoid the mootness rule is by demonstrating bad faith on the part of the purchaser.

"To show lack of good faith, the debtor must demonstrate that there was fraud or collusion between the purchaser and the seller or the other bidders, or that the purchaser's actions constituted an attempt to take grossly unfair advantage of other bidders." *In re 255 Park Plaza*, 100 F.3d at 1218 (internal quotation marks omitted). The Whites allege that the purchaser and the auctioneer colluded to drive up the final bid in private, settling on a purchase price of $156,115.23. The Chapter 7 Trustee concedes that the final bid at the online auction was less and that the Trustee negotiated with the eventual purchasers to raise their final bid to the $156,115.23 figure.

But the Whites do not explain how this negotiation evinces bad faith on the part of the purchaser. It is difficult to conceive of a circumstance where a trustee and purchaser would collude to offer a deceptively low bid at auction (although while still being the highest bidder) and then after the close of the auction negotiate to raise that offer. No bad faith explanation could be conceived for this situation. Indeed, the explanation offered by the Trustee is logical and the bankruptcy court did not err in adopting it. The Trustee explains that she negotiated with the highest bidders to raise their price so that the remaining proceeds of the sale (after costs) would be $135,000. The primary lienholder on the property, the mortgage-holder, indicated that it would not accept less than $135,000 to release its claim, which was well in excess of that amount. The Trustee continued negotiations to secure a better result for the bankruptcy estate. The Whites have not offered a different explanation, let alone one that amounts to bad faith.

Thus, since the Whites cannot show bad faith by the purchaser of the 11085 Block Road property, all claims on appeal related to that real estate are moot. The Whites' appeal of the order confirming the sale of that piece of property will be dismissed as moot.

**IV.**

Accordingly, it is **ORDERED** that Appellant Chapter 7 Trustee's motion to dismiss, ECF No. 5, is **GRANTED**.

It is further **ORDERED** that the Appeal, Case No. 15-cv-12354, is **DISMISSED with prejudice**.

Dated: March 10, 2016                                s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 10, 2016.

                                    s/Michael A. Sian
                                    MICHAEL A. SIAN, Case Manager